185 So.2d 271 (1966)
BICKHAM MOTORS, INC.
v.
James L. CRAIN.
No. 6612.
Court of Appeal of Louisiana, First Circuit.
April 4, 1966.
*273 John W. Anthony, of Talley, Anthony, Hughes & Knight, Bogalusa, for appellant.
Hilary J. Crain, of Watts & Crain, Franklinton, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
Defendant takes this appeal from a deficiency judgment obtained by plaintiff subsequent to sale of appellant's truck under executory process.
Appellee's initial suit for executory proceedings was resisted by defendant who sought to enjoin the contemplated sale on the ground the truck, the subject matter of the transaction, was possessed of redhibitory vices at the time of its sale. In so contending defendant was proceeding in conformity with established authority which permits urging the defense of redhibitory defects in opposition to a petition for executory process. See Coco v. Mack Motor Truck Corp., 235 La. 1095, 106 So.2d 691. The trial court, however, found no redhibitory defect in the truck, rejected defendant's reconventional demand, dismissed the injunction proceeding, and awarded a personal money judgment in plaintiff's favor and against defendant. On appeal this court affirmed the findings of the trial court, but amended the judgment to grant plaintiff the relief prayed for, namely, an order of executory process, rather than the personal judgment which the district court had no power to grant. See Bickham Motors, Inc. v. Crain, La.App., 135 So.2d 649. Rehearing was denied by this court and likewise certiorari was denied by the Supreme Court.
To establish its claim to deficiency judgment plaintiff offered the testimony of its President, Bruce Bickham, who averred the mortgaged vehicle was offered for sale with appraisement and, failing to bring two-thirds of its appraised value, was readvertised for sale without appraisement and actually sold July 31, 1962, for the sum of $90.00. After payment of costs the aforesaid price yielded a net of $5.65 to be credited to the debt owed plaintiff by defendant. It appears the proces verbal of the sheriff's sale has been lost and there is no documentary evidence of record to substantiate that the property was initially advertised for sale with appraisement and subsequently reoffered for sale without evaluation. This circumstance appears of no moment, however, inasmuch as defendant apparently concedes the property was duly advertised prior to sale.
In opposing plaintiff's present claim for deficiency judgment, learned counsel for appellant makes the following contentions by way of answer and reconventional demand: First, it is argued plaintiff had no initial right to proceed by executory process because of a discrepancy between the date of the note and the chattel mortgage given in security therefor, consequently the entire debt was discharged; secondly, counsel maintains defendant was unable to prove with certainty the balance due on the note; and finally, in the alternative, that plaintiff, as keeper of the seized property pursuant to appointment as such by the Sheriff, failed to properly care for the truck thus allowing it to deteriorate to the point of virtual worthlessness, for which dereliction plaintiff is liable in damages to appellant.
Plaintiff countered defendant's reconventional demand with an exception of res judicata based on the contention the issue of alleged discrepancy between the note and chattel mortgage was determined adversely *274 to defendant in the original proceeding which held plaintiff was entitled to proceed via executiva. The learned trial court sustained plaintiff's exception of res judicata, but on application for a new trial recalled its decree and rendered judgment overruling and dismissing plaintiff's said exception. After trial on the merits judgment was rendered in favor of plaintiff and against defendant in the sum of $4,024.31, with interest from date of judicial demand, until paid, less a credit of $5.65, together with attorney's fees in the amount of $1,006.08, and all costs.
It is the well settled jurisprudence of this state that executory process is a harsh remedy consequently every link of the chain of evidence necessary to support such a proceeding must be in authentic form, excepting only those requirements relaxed by statutory provision. LSA-C.C.P. Article 2635; Miller, Lyon & Co. v. Cappel, 36 La.App. 264; General Contract Purchase Corp. v. Doyle, La.App., 56 So.2d 432. For an exception, see Commercial Credit Corp. v. White, La.App., 166 So. 2d 743; see also LiRocchi v. Keen, 242 La. 111, 134 So.2d 893. Any lack of identity of the note sued on and the description thereof in the mortgage, including a discrepancy in date, precludes the use of executory process. Ricks v. Bernstein, 19 La.Ann. 141; Taylor v. Boedicker, 21 La. Ann. 170; Hackemuller v. Figueroa, 125 La. 307, 51 So. 207; Kreher v. Theisman's Estate, 125 La. 600, 51 So. 656; Southern Hardware & Woodstock Co. v. Smith, 11 La.App. 49, 123 So. 403; Myrtle Grove Packing Company v. Mones, 226 La. 287, 76 So.2d 305. If due to a typographical or clerical error, a discrepancy in date may be corrected. LSA-R.S. 13:4104, 13:4105.
In the present case, however, no attempt was made to correct the discrepancy between the note dated April 23, 1959, and the recitation in the act of sale dated May 15, 1959, describing the note as "of even date herewith." We further note the witness acknowledgment of the Chattel Mortgage in question is dated "the 23rd day of May, 1959," with lines drawn through the word "May" indicating intent to delete same and the interlineation of the word "April" in lieu thereof. We also observe that the undated paragraph on the note identifying it with an "act of sale and mortgage of this date" is not signed by the same notary public before whom the act of sale and chattel mortgage was acknowledged.
As previously indicated, counsel for plaintiff maintains the issue of the propriety of the former executory proceedings is res judicata and may not therefore be raised by appellant in defense of this present action for deficiency judgment. In this regard counsel for appellee points out that the same defense was presented in the original proceeding wherein defendant attempted to enjoin sale of the mortgaged truck by executory process. We note that appellant's petition to enjoin the prior executory proceedings specifically alleges appellee was not entitled to proceed executorily because of the stated discrepancy between the note and mortgage. Nevertheless, we ordered seizure and sale of the mortgaged property pursuant to executory process. In his application to this court for rehearing, counsel for defendant reurged the same contention in the following language:
"The Court's judgment is in obvious error. The Court has ordered executory process in a case in which no executory process can possibly be ordered. As will appear by merely looking at the chattel mortgage it is dated May 15, 1959, and the note identified therewith is dated April 23, 1959. The Court is permitting the plaintiff to proceed by executory process in a case in which the note and chattel mortgage don't even bear the same date."
Following denial of a rehearing by this court, defendant applied to the Supreme *275 Court for writs of certiorari alleging, inter alia, the following:
"The Court of Appeals erred in ordering a executory process in a case where the chattel mortgage and note do not bear the same date."
It is patent, therefore, that the issue of discrepancy between note and mortgage was properly raised in the prior action involving the same parties in the same quality. While it is true the rule of res judicata provided by LSA-C.C. Article 2286 must be strictly construed, nevertheless all of the essential elements are present in the instant case.
A review of the case hereinabove cited indicates four methods by which a defective executory proceeding may be attacked, namely, by injunction, by appeal from the order of seizure, by way of a defense to suit for deficiency judgment and by action to annul a deficiency judgment. However, we are unaware of any authority permitting a debtor to raise the issue of illegality of the executory proceedings in defense of an action for deficiency judgment after having unsuccessfully raised the same issue in the proceeding via executiva. Although the debtor has a right to damages for the seizure and sale of his property by illegal executory process as held in Osborne v. Mossler Acceptance Co., 214 La. 503, 38 So.2d 151, when the executory proceeding has been upheld as valid by the State Supreme Court the issue of validity is foreclosed between the parties and may not be reasserted in a subsequent action wherein the debtor seeks recovery of damages for an alleged illegal proceeding. The conclusions which this court reached in Keen v. LiRocchi, La.App., 153 So.2d 134, in effect established the rule that once the validity of an order for seizure and sale under executory process has been declared by definitive judgment in an action by the proper parties at interest, the matter is res judicata. We conclude, therefore, plaintiff's plea of res judicata is well taken and bars our consideration of appellant's contention that the prior executory proceeding was invalid.
However, the fact that an order for seizure and sale by executory process has received the stamp of judicial approval by the ultimate appellate authority does not obviate the necessity of the creditor's complying with all legal requirements and safeguards prescribed with regard to execution of the sale ordered. On the contrary, the debtor retains all rights and safeguards the law prescribes with respect to the sale, including a true and legal appraisement of the property and its protection and preservation from harm, damage and deterioration while it remains under seizure.
The record shows the truck in question was seized in good condition excepting the defective engine the imperfections of which became manifest some three weeks after its installation as a replacement in September, 1959. See Bickham Motors, Inc. v. Crain, La.App., 135 So.2d 649, 651. It is undisputed that at the time of seizure the exterior and interior of the body of the vehicle were in good condition. It also appears the Sheriff appointed plaintiff-creditor the keeper of the vehicle which was initially stored on the premises of plaintiff corporation. Subsequently, without the consent, knowledge or authorization of either the Sheriff or debtor, plaintiff caused the vehicle to be removed to the farm home of Mrs. Donald Bickham where it was parked in the open. On some undisclosed date between seizure and sale the" engine of the truck was removed, completely dismantled and disassembled and placed on the chassis behind the cab. Despite attempts to protect the engine components by means of a canvas or tarpaulin, the parts were nevertheless subjected to the elements resulting in considerable rust and deterioration. The windows of the cab were left open admitting moisture, rain and dampness which caused considerable mildew and other damage to the interior of the cab. As a consequence of such flagrant *276 neglect and lack of proper care the vehicle understandably depreciated to a state of virtual worthlessness as will hereinafter appear. The truck was purchased by defendant on April 23, 1959, for the price of $5,718.96, and was seized by the Sheriff on January 11, 1960, pursuant to an order of seizure and sale dated November 30, 1959. During the time the vehicle remained in defendant's possession it was driven approximately 6,000 miles. When eventually sold the price of adjudication was $90.00.
In rejecting defendant's claim for damages our learned brother below concluded that since no law was cited by either litigant setting forth the duties of a keeper of seized property the keeper owed no duty to the debtor. He also concluded that if there were in fact a duty owed by the keeper it was due the Sheriff and not defendant. Finally, he found that defendant had not proved his damages.
The duty of the Sheriff with respect to seized movables is set forth in LSA-C.C.P. Article 326 which provides as follows:
"Art. 326. Protection and preservation of property seized
The sheriff shall take actual possession of all movable property seized which is susceptible of actual possession and may remove it to a warehouse or other place of safekeeping.
He may take actual possession of all immovable property seized, unless it is under lease or occupied by an owner.
He shall safeguard, protect, and preserve all property seized of which he has taken or is required to take actual possession; and for such purposes may appoint a keeper of the property." (Emphasis added.)
Incumbent upon the Sheriff in such instances is the clear duty and obligation of safeguarding, protecting and preserving the property seized. That he may delegate this duty to a third party is clearly provided. Obviously, the degree of care incumbent upon the keeper appointed by the Sheriff is identical with that of the Sheriff himself, especially so when the keeper is the seizing creditor.
Also applicable to the case at bar are the provisions of LSA-C.C. Articles 2979 and 2980 which define judicial sequestration and prescribe the duties of a judicial guardian in language as follows:
"Art. 2979. Judicial sequestration, definition
Art. 2979. The judicial deposit is that which is made in consequence of an order or judgment rendered by a judge in the cases provided for by the laws regulating judicial proceedings."
"Art. 2980. Obligations of guardian and of seizing creditor
Art. 2980. The appointment of a judicial guardian produces, between the person seizing and the guardian, reciprocal obligations. The guardian must use, for the preservation of the effects seized, the care of a prudent father of a family; he must produce them either for the discharge of the person who has seized them for sale, or to the person against whom the execution was levied, in case the seizure be raised."
We also note the provisions of LSA-C.C. Article 2981 which render the judicial guardian subject to the same obligations imposed in cases of conventional sequestration. Among the rules governing conventional sequestration made applicable to judicial guardians pursuant to LSA-C.C. Article 2981, we note those contained in LSA-C.C. Articles 2975 and 2937 which state:
"Art. 2975. Gratuitous sequestration
Art. 2975. When it is gratuitous, it is a real contract of deposit, subject to all rules which apply to that contract, save the differences hereafter explained."
"Art. 2937. Degree of care required of depositary
Art. 2937. The depositary is bound to use the same diligence in preserving the *277 deposit that he uses in preserving his own property."
The Sheriff therefore owes the clearly expressed duty to the seizing creditor and debtor to preserve the sequestered property with "the care of a prudent father of a family" with the "same diligence * * * that he uses in preserving his own property." It is settled law that a Sheriff is responsible to the owner for any damage resulting from his neglect or failure to take due and proper care of property taken into his possession under seizure. Jones v. Robeline Garage et al., 16 La.App. 601, 135 So. 120, Whitton v. Jones, Sheriff, 2 La. Ann. 802; Parish v. Hozey, Sheriff, 17 La. 578. The seizing creditor, of course, has a similar right to proceed against the Sheriff for damages should the Sheriff's neglect diminish the value of the property under seizure. Bloomenstiel v. Tridico, La.App., 156 So. 793.
While we are not herein concerned with an action for damages against the Sheriff, the foregoing authorities make abundantly clear the rule that both creditor and debtor have a legally recognized interest in the preservation of property seized pursuant to judicial authority. It also appears that the keeper entrusted by the Sheriff with the protection and preservation of the property during seizure is a depositary as defined by the appropriate articles of the Civil Code. In such capacity he bears the same duties, burdens and obligations of a depositary and becomes liable for damages caused by his neglect. By the express provisions of LSA-C.C. Article 2945, he is relieved of liability for damage or diminution in value resulting from ordinary deterioration and depreciation.
In the instant case it is clear beyond doubt that the seizing creditor appointed keeper failed to preserve the seized property in an ordinarily prudent manner. As we view plaintiff's conduct it was tantamount to gross neglect which in essence reduced the value of the seized property to near worthlessness thus effectively depriving defendant of a true appraisal of the seized property. We believe therefore that the seizing creditor appointed keeper who fails to discharge the duty of protection and preservation incumbent upon him to the extent the value of the movables in his charge deteriorates almost to the vanishing point, must be held in the same position as if the sale were provoked without benefit of appraisement.
A sale made without benefit of appraisement deprives the creditor of the right to deficiency judgment. Simmons v. Clark, La.App., 64 So.2d 520; Gumina v. Dupas, La.App., 159 So.2d 377. An illegal appraisal, however, does not necessarily vitiate an otherwise legal executory proceedings (Tapp v. Guaranty Finance Company, La.App., 158 So.2d 228, 233), but the statute making appraisal an indispensable prerequisite to deficiency judgment is a requirement of public policy which the legislature has decreed the mortgagor may not waive. LSA-R.S. 13:4107. The beneficent provisions of the applicable law are intended for the protection of the mortgagor and impose a specifically declared penalty upon the seizing creditor who violates its terms. The legislative intent thus expressed may not be thwarted by the negligence of a seizing creditor who gains possession of the seized property by virtue of his appointment as its keeper.
Accordingly, the judgment of the trial court in favor of plaintiff, Bickham Motors, Inc., and against defendant, James L. Crain, is reversed, dismissed and set aside and judgment rendered herein rejecting and dismissing plaintiff's demand for deficiency judgment at plaintiff's cost.
Reversed and rendered.