COLE, Judge.
Baker Bank (now First State Bank & Trust) appeals a judgment relieving defendant of his obligation as an endorser on three promissory notes. This suit on the notes and accompanying chattel mortgages was originally filed against two defendants, Donald R. Chausse as endorser and 5601 Millworks, Inc. as principal maker, for the unpaid balance of $17,510.47. Baker Bank, as holder of the notes, sequestered the mortgaged property and proceeded to judgment against 5601 Millworks, Inc. only. Judgment was rendered in the amount prayed for, a writ of fieri facias was issued, the property was seized, advertised, appraised and sold to plaintiff for $8,466.74, two-thirds of the appraised value.
Baker Bank now seeks to recover the deficiency from the endorser, Donald Chausse. Chausse asserts he was prejudiced by improper advertisement of the seized property and by deterioration of the property while it was under the care of the custodian, Bill Pruyn. The court agreed and ruled these factors decreased the marketability and the value of the property. Defendant was released from his obligation of endorser under La.Civ.Code art. 3061.[1] We disagree with the findings of the trial court, and because manifest error has been committed, we reverse. Canter v. Koehring, 283 So.2d 716 (La.1973).
There is no merit to either of Chausse’s defenses. His claim that the advertisement was so inadequate as to reduce the marketability of the merchandise is unsubstantiated. The mortgaged property consisted of eleven pieces of woodworking equipment. Although the advertisement listed only four items, the last line read “etc., all as shown on inventory list in Sheriff’s office.” This language clearly indicated to any interested reader that other items would be offered. Any potential bidder could have obtained the information from the sheriff’s office. Lee Guidry of the sheriff’s office testified that the cost of *263 listing every piece of seized property was often prohibitive so that the general policy was to select four of five items to be specifically listed. He stated that readers are always informed that information concerning other property is available at the sheriff’s office.
Although La.Code Civ.P. art. 2331 requires that movable property be advertised at least once, there are no statutory requirements concerning the description of the property. The jurisprudence does not give any concrete guidelines as to how detailed the description must be. Appellant cites several early Louisiana cases that deal mainly with sales of real estate. Although none of the cases deal specifically with the description of movable property, a general principle is set forth. The property must be described in as accurate manner as the case will allow so that bidders know what they are bidding for. Dearmond v. Courtney, 12 La.Ann. 251 (1857). Certainly the ad would have been inadequate had it not contained the reference to the complete list at the sheriff’s office. We find that such reference enabled any potential bidder to become adequately informed as to what property was to be sold.
The trial judge mentioned in his written reasons that the inadequacy of the advertisement was proven by the fact that the seizing creditor later sold the property for $15,000. This fact is totally irrelevant as to the sufficiency of the advertisement. The ultimate extension of this line of reasoning would be to say that if the property had been subsequently sold by the creditor for less than the creditor paid for it, this would prove that the advertisement had been sufficient. The advertisement and the subsequent sale by the creditor are not related in any way. So long as the property was purchased at two-thirds of its appraised value of $12,700, as required by law, the purchaser’s profitable resale of the property does not reflect at all upon the sufficiency of the advertisement.
Regardless of the adequacy of the advertisement we feel defendant has waived his right to complain at this point. His remedy was to seek an injunction of the sale under La.Code Civ.P. art. 2298 which provides:
“Injunctive relief prohibiting the sheriff from proceeding with the sale of property seized under a writ of fieri facias shall be granted to the judgment debtor or to a third person claiming ownership of the seized property:
(1) When the sheriff is proceeding with the execution contrary to law;”
Chausse’s defense is that the sale was not executed in accordance with law because of the inadequacy of the advertisement. Defendant received notice of seizure so was well aware that eleven items were subject to judicial sale. The advertisement was published on February 17, 1978 in accordance with La.Code Civ.P. art. 2331. Although the publication put defendant on notice as to its contents, he made no attempt to enjoin the sale. This failure to act amounts to a waiver of rights. It is inappropriate for defendant to raise this issue as a defense now.
Defendant’s second defense, that the value of the property depreciated because of lack of due care of the custodian, is not substantiated by the record. Art. 326 of the La.Code of Civ.P. defines the duties of the sheriff with respect to seized movables and in pertinent part provides as follows:
“The sheriff shall take actual possession of all movable property seized which is susceptible of actual possession and may remove it to a warehouse or other place of safekeeping.
“He shall safeguard, protect, and preserve all property seized of which he has taken or is required to take actual possession; and for such purposes may appoint a keeper of the property.”
The keeper of the property is a depositary and is governed by the Civil Code article on deposit. Bickham Motors, Inc. v. Crain, 185 So.2d 271 (La.App. 1st Cir. 1966). A depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property. La.Civil Code *264 art. 2937. However, the depositary is only bound to restore the thing in the state in which it is at the moment of restitution. He is not responsible for ordinary deterioration and depreciation not caused by an act of his. La.Civil Code art. 2945. Bickham Motors, Inc. v. Crain, supra.
The trial record does not show any lack of due care on the part of Bill Pruyn, the custodian appointed by the sheriff. Some of the larger pieces of machinery had to be dismantled in order to be transported to Mr. Pruyn’s warehouse. He acknowledged that some of the machinery rusted while in storage yet there is no evidence that Mr. Pruyn did not care for this machinery in the same way he would have cared for his own machinery in storage. The record indicates that the rusting was an inevitable process that affects machinery when it is not being used and cleaned on a regular basis. There is no evidence that the rusting was caused by any lack of due care of the custodian. He was not obligated to continuously clean the machinery to prevent natural rusting from occurring.
Even if the record had supported the allegations the custodian had failed to use due care in preserving the equipment, defendant has waived his right to complain about any alleged damage occurring after October 27,1977. Defendant pleaded “wastage” of the property as a defense in his answer on October 27, 1977 yet he allowed the property to remain at Mr. Pruyn’s building until the judicial sale took place in April of 1978. Once defendant became aware the machinery was rusting he could have filed a rule to show cause why the property should not be taken from the custody of Mr. Pruyn. It would indeed by inequitable to relieve defendant of his obligation as an endorser when defendant was well aware of the alleged deterioration of the machinery but took no steps to remedy the situation.
For the foregoing reasons, the judgment of the trial court is reversed. Defendant Donald Chausse is ordered to pay plaintiff Baker Bank and Trust the following sums: $10,264.10 with interest at the rate of $2.78 per day from February 8, 1977 until paid, subject to a credit on April 5, 1978 of $7,746.69 such credit representing $8,466.74 derived from the sale of the mortgaged property less $718.05 for costs of the judicial sale; $3,107.07 with interest at the rate of $0.83 per day from February 8, 1977, until paid; $4,139.30 with interest at the rate of eight (8%) percent per annum from December 10, 1976 until paid; plus twenty-five (25%) percent of the total amount of said principal and interest as attorney’s fees. Appellee is cast for all costs.
REVERSED.

. “The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety.”